**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SARAH E. OVERBECK,

   Plaintiff,

v.             Case No:   6:25-cv-100-LHP

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant

---

**MEMORANDUM OF DECISION**

Sarah E. Overbeck ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI").   Doc. No. 1.   Claimant raises one argument challenging the Commissioner's final decision and based on this argument, requests that the matter be remanded for further administrative proceedings.   Doc. No. 19, 22.[1]   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.   Doc. No. 21. For the reasons stated herein, the Commissioner's final decision will be affirmed.

---

[1] While Claimant identifies two issues in her opening brief, as discussed below, both issues relate to the same argument regarding the opinions of Claimant's treating physician.

## I.    PROCEDURAL HISTORY.[2]

On June 25, 2021, Claimant filed an application for SSI alleging a disability onset date of January 5, 1990, which she later amended to June 25, 2021.   *See* R. 22, 65-72, 73, 74-83, 178-90, 330-41.    Her claim was denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.    R. 89-98, 104-34. A telephonic hearing was held before the ALJ on February 7, 2024, at which Claimant was represented by an attorney.    R. 42-58, 154-67.    Claimant and a vocational expert ("VE") testified at the hearing.    R. 42-58.

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.    R. 19-41.    On October 31, 2024, the Appeals Council denied Claimant's request for review.    R. 6-11.    Claimant now seeks review of the final decision of the Commissioner by this Court.    Doc. No. 1.

## II.    THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a).    R. 22-35.[4]    The ALJ

---

[2] The transcript of the administrative proceedings is available at Doc. No. 12, and will be cited as "R. ___."

[3] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record in their briefing.    *See* Doc. Nos. 19, 21, 22.    Accordingly, the Court adopts those facts referenced and only restates them herein as relevant to considering the issues raised by Claimant.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.    *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*,

first determined that Claimant had not engaged in substantial gainful activity since June 25, 2021, the application date and amended disability onset date.   R. 24.   The ALJ also found that Claimant suffered from the following severe impairments: bipolar disorder, post-traumatic stress disorder ("PTSD"), substance abuse disorder, hepatitis, HIV, hearing loss, heart disease, asthma, and chronic obstructive pulmonary disease ("COPD").   *Id.*   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 24-27.

Next, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5]  except:

---

190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

> [Claimant can] occasionally crouch/stoop/kneel/craw[l]; occasionally climb ramps/stairs but never ladders/ropes/scaffolds; never be exposed to unprotected heights, hazardous machinery, extreme heat or be exposed to concentrated dust/fumes/pulmonary irritants; simple tasks, simple work related decisions, occasional interaction with the general public.

R. 27.   The ALJ found that Claimant has no past relevant work.   R. 34.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include marker, assembler 1, and inspector hand packager.   R. 34-35.   Accordingly, the ALJ concluded that Claimant had not been under a disability, as defined in the Social Security Act, from the June 25, 2021 application and amended disability onset date through the date of the decision.   R. 35.

## III.   STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner

---

pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

Claimant identifies two assignments of error in her opening brief, however, on reading they both address the same issue:   whether the ALJ applied the correct legal standards to the consideration of the opinions of Ronald Cathcart, M.D., Claimant's treating physician.   Doc. Nos. 19, 22.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. § 416.945(a)(3). Claimant filed her application for SSI payments on June 25, 2021. R. 65-72, 73, 74-83, 178-90. Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

(a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[6] The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how

---

[6] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c).

we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c(a).  The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."  *Id.* § 416.920c(b)(2).

"Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."  *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).  Thus, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources," "the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *See id.*, at *2 n.6 (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5)).

Here, Claimant challenges the ALJ's consideration of the opinions of Dr. Cathcart, Claimant's primary care provider.  Doc. Nos. 19, 22.  On September 29,

2023, Dr. Cathcart completed a form "Medical Opinion Re:   Human Immunodeficiency Virus (HIV) Infection Medical Assessment Form and Ability to Do Work-Related Activities (Mental)" (the "Assessment Form").   R. 2896-2902. The form is largely in check-the-box format, and contains the following opinions of Dr. Cathcart: (1) marked restrictions in activities of daily living, in maintaining social functioning, and/or in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace; (2)   Claimant can only sit, stand, and/or walk for less than 2 hours in a 8-hour workday; (3) Claimant would need to take more than 10 unscheduled breaks for more than 1 hour during an average workday; (4) Claimant should elevate her legs between her heart and waist level for at least 2 hours during a typical 8-hour daytime period; (5) Claimant can never lift and carry more than 10 pounds in a competitive work environment; and (6) Claimant would be off task 25% or more of a typical work day.   R. 2900-01.

Regarding Claimant's mental ability to do work-related activities, Dr. Cathcart marked boxes that Claimant has no useful ability to (1) work in coordination with or in proximity to others without being unduly distracted; (2) make simple work-related decisions; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (4) perform at a consistent pace without an unreasonable number and length of rest periods.   R.

2901.[7]   Dr. Cathcart also marked boxes that Claimant would be unable to meet competitive standards regarding maintaining attention for two-hour segments, maintaining regular attendance being punctual within customary tolerances, and sustaining an ordinary work routine without special supervision.   *Id.*[8]   And, Dr. Cathcart marked that Claimant would be seriously limited in her abilities to remember workplace procedures, to understand and remember very short and simple instructions, to accept instructions and respond appropriately to critiques from supervisors, and to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.   R. 2901-02.[9]   However, Dr. Cathcart opined that Claimant would have limited but satisfactory ability to carry out very short and simple instructions, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions, and that Claimant was not limited in her ability to ask simple questions or request assistance.   *Id.*[10]   Dr. Cathcart further opined that Claimant would have

[7] "No useful ability to function" is defined as "an extreme limitation [where] your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting."   R. 2901.

[8] "Unable to meet competitive standards" is defined as "your patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week."   R. 2901.

[9] "Seriously limited" is defined as "noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week.").   R. 2901.

[10] "Limited but satisfactory" is defined as "noticeable difficult (e.g., distracted from

good days and bad days, would be absent from work more than 4 days per month, and that her limitations would continue for at least 12 months.   R. 2902.   The Assessment Form states that these limitations are "based on my review of my patient's medical records, my review of the clinical findings, my knowledge of the patient's condition, and my professional experience," however Dr. Cathcart does not otherwise provide any explanation for any of the limitations listed on the Assessment Form.   *Id.*

The ALJ summarized Dr. Cathcart's opinions and found them to be unpersuasive for the following reasons:

> Ronald Cathcart, M.D., one of the claimant's treatment providers at Comprehensive Health Care, completed an HIV medical assessment form and reported she has HIV with hepatitis but no other associated viral, bacterial or fungal infections, and no hematological abnormalities, neurological abnormalities, HIV wasting syndrome, diarrhea, cardiomyopathy, nephropathy, or infections resistant to treatment or requiring hospitalization.   Dr. Cathcart also did not identify any manifestations of HIV infection resulting in signs or symptoms such as fatigue, fever, weight loss, pain or night sweats. However, Dr. Cathcart found the claimant has marked restrictions of activities of daily living and marked difficulties in maintaining social functioning and completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.   He opined that she can sit for less than 2 hours, stand/walk less than 2 hours, needs unscheduled breaks 10 times a day for more than 1 hour, should elevate her legs at least 2 hours during a typical work day, can lift and carry no amount of weight at all, and would be off task 25% or more of a typical work day.   In terms of the ability to do work-related mental activities, Dr. Cathcart found the claimant was seriously limited or unable to meet competitive standards in nearly all mental

job activity) no more than 10 percent of the workday or work week."   R. 2901.

- 10 -

abilities except for carrying out very short and simple instructions, asking simple questions or requesting assistance, respond appropriately to changes in a routine work setting, and being aware of normal hazards.   He said she has good and bad days and will be absent more than 4 days a month. Dr. Cathcart said complete abstinence from drugs or alcohol would not change the above limitations. (Ex. 33F).

This opinion is not persuasive.   Dr. Cathcart did not support his opinion with explanation and the limitations assessed are somewhat internally inconsistent.   For example, Dr. Cathcart said she is seriously limited in the ability to understand and remember very short and simple instructions, but she has satisfactory ability to carry out very short and simple instructions.   Dr. Cathcart's own exam findings do not support the extreme physical or mental limitations assessed.   For example, he noted she was healthy-appearing, well-nourished, and well-developed. She ambulated normally. She exhibited good judgment, normal mood/affect, and was alert  and oriented.   Her memory was normal. Her breath sounds were normal and she had normal cardiovascular findings.    Her abdomen was soft, non-distended, and non-tender[].   She had normal muscle tone and motor strength.   She had normal movement of all joints, bones, and muscles. Her gait and station were normal.   (Ex. 31F).   The exams of record otherwise do not reflect deficits in strength, coordination, gait, or sensory abnormalities that would support his opinion.   The course of treatment shows her conditions are generally stable overall, which is not consistent with his finding that she would be absent more than 4 days a month.   As noted above, her attention/concentration are also generally normal and would not support his finding that the claimant would be off task more than 25% of the work day.

R. 33-34.

Claimant argues that the ALJ erred in finding Dr. Cathcart's opinions not supported.   Doc. No. 19, at 19-29; Doc. No. 22.   Specifically, Claimant takes issue with the ALJ's finding that Dr. Cathcart did not provide any explanation for his opinions; failed to account for "all of the objective evidence in the medical record,"

and in particular the records of Nurse Carscallan; erred in stating that Dr. Cathcart's opinions were internally inconsistent and failed to identify a "genuine inconsistency" in Dr. Cathcart's medical records; and failed to account for the fluctuating nature of Claimant's symptoms.   Doc. No. 19, at 19-29; Doc. No. 22. Upon review, however, the Court agrees with the Commissioner that the ALJ's analysis was sufficient.[11]   *See* Doc. No. 21.

As to Claimant's first argument, as documented above, Dr. Cathcart did not provide any explanation in the Assessment Form for any of his opinions.   Rather, the Assessment Form is largely in check-the-box format, and the support Claimant points to is simply Dr. Cathcart's listing of Claimant's various diagnoses, along with a conclusory reference to medical records and clinical findings.   R. 2896-2902.   The ALJ correctly summarized these facts, and further noted Dr. Cathcart's notations that Claimant had no associated abnormalities, and no treatment resistant

---

[11] Claimant does not raise any challenges to the consistency factor, *i.e.*, whether Dr. Cathcart's opinions are consistent with the other medical evidence of record.   *See generally Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) ("[C]onsistency relates to the relationship between a medical source's opinion and other evidence within the record.").   As such, the Court does not address this factor further.   *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").   The Court also does not consider the Commissioner's argument that the pre-printed Assessment Form has little persuasive value, given that it is a *post hoc* rationale not addressed by the ALJ.   Doc. No. 21, at 11.   *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (courts will not affirm based on *post hoc* rationale that "might have supported the ALJ's conclusion").

infections. R. 33. Therefore, the ALJ's finding was supported by substantial evidence and Claimant's first argument is unpersuasive. *See Pleinis v. Comm'r of Soc. Sec.*, No. 8:21-cv-2724-DNF, 2023 WL 3774584, at *4 (M.D. Fla. June 2, 2023) (ALJ's reasoning that medical opinion was unsupported by treating physician's own records was supported by substantial evidence where physician listed numerous diagnoses and problems on assessment form, but did not explain how they resulted in the severe limitations opined, and failed to cite to any objective clinical findings in support).

Similarly, the Court finds the ALJ's statement that some of Dr. Cathcart's opinions are internally inconsistent to be supported by the record. As also documented above, Dr. Cathcart marked somewhat contradictory boxes on the Assessment Form – that Claimant is seriously limited in her ability to understand and remember very short and simple instructions, while also marking that Claimant can satisfactorily carry out very short and simple instructions. R. 2901-02. Claimant's contention that the ALJ made "an error in logic" is really a request for this Court to reweigh the evidence, which the Court cannot do. *See Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." (citations and quotations omitted)). At bottom, Claimant does not argue that the ALJ's finding was not supported by substantial evidence, but rather Claimant simply disagrees with the ALJ. *See*

- 13 -

*Shoemaker v. Comm'r of Soc. Sec.*, No. 6:22-cv-1046-DCI, 2023 WL 5625298, at *3 n.8 (M.D. Fla. Aug. 31, 2023) ("Claimant cannot prevail by simply substituting his own characterization of the record for the ALJ's; when the record supports multiple readings and the ALJ's chosen reading is a permissible one, the Court must affirm. . . ." (citations omitted)).

In addition, Claimant argues that there is no "genuine inconsistency" between Dr. Cathcart's opinions and his medical records.   Doc. No. 19, at 27-29.   But again, the ALJ clearly identified portions of Dr. Cathcart's records that contradicted the extreme limitations listed in the Assessment Form, including Dr. Cathcart's findings that Claimant was healthy-appearing, well-nourished, well-developed, ambulated normally, exhibited good judgment, normal mood affect, was alert and oriented with normal memory, and had normal breathing and cardiovascular findings.   R. 34.   The ALJ further discussed Dr. Cathcart's findings that Claimant had normal muscle tone, motor strength, gait and station, and normal movement of all joints, bones, and muscles.   *Id.*   And the ALJ noted a stable course of treatment, which contradicted Dr. Cathcart's opinion that Claimant would be absent from work more than 4 days per month.   *Id.*   In sum, the ALJ reviewed Dr. Cathcart's medical records and noted several inconsistencies, thus the ALJ's decision was supported by substantial evidence.   *See Harris v. Soc. Sec. Admin., Comm'r*, No. 4:22-cv-00502-NAD, 2023 WL 5963433, at *14 (N.D. Ala. Sept. 13, 2023) (finding that multiple

relatively normal findings in medical provider's records create genuine inconsistencies "in light of the severity of the limitations assessed," and particularly where the medical provider "did not specifically explain the bases for her opinions on [plaintiff's] limitations.").[12]

Claimant's reference to medical records for Nurse Carscallan (who worked with Dr. Cathcart) is also unpersuasive. Claimant points to an October 7, 2021 medical visit where Nurse Carscallan documented Claimant's decision not to take Biktarvy for her HIV treatment due to nausea and vomiting, and a July 12, 2023 follow-up appointment where Claimant reported fever and night sweats, vision changes, difficulty hearing, frequent nosebleeds, ringing in her ears, shortness of breath when walking, palpitations, heart murmur, ankle swelling, cough, abdominal pain, nausea, constipation, GERD, muscle aches, back pain, rash, seizures with loss of consciousness, weakness, numbness, dizziness, frequent headaches, gait dysfunction, depression, sleep disturbance, restless sleep, hallucinations, mood swings, memory loss, agitation, and excessive bleeding. Doc. No. 19, at 22-23; R. 1227, 2872. However, the ALJ specifically considered these records in making his findings, and also addressed them elsewhere in her decision. R. 28, 33-34.

---

[12] Claimant's citation to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019) is unpersuasive as it applied the treating physician "good cause" standard which does not apply to the present case.

In other words, the ALJ did consider all of Dr. Cathcart's records in reaching her decision; Claimant simply asks the Court to reweigh the evidence and find the portions of the records she points to more persuasive.   But again, that is outside the narrow scope of the Court's review.   *Winschel*, 631 F.3d at 1178.   *See also Gutierrez v. Comm'r of Soc. Sec.*, No. 2:23-cv-78-NPM, 2024 WL 1270488, at *5 (M.D. Fla. Mar. 26, 2024) ("An ALJ's opinion is not required to take any specific form.   Indeed, it matters not whether the ALJ names particular items in the record while evaluating a medical opinion so long as they are discussed elsewhere in the decision."); *Irwin v. Comm'r of Soc. Sec.*, No. 2:20-cv-230-MRM, 2021 WL 4077586, at *7 (M.D. Fla. Sept. 8, 2021) ("[N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions.   Instead, the ALJ's RFC determination must merely be supported by substantial evidence." (citations omitted)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 5:22-cv-18-MAP, 2023 WL 2473427, at *5 (M.D. Fla. Mar. 13, 2023) "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).[13]

---

[13] Notably, "in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source."   *Malak v. O'Malley*, No. 8:23-cv-667-SPF, 2024 WL 1231317, at *7 (M.D. Fla. Mar. 22, 2024), *aff'd sub nom. Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280 (11th Cir. 2025) (citing 20 C.F.R. § 404.1520c(b)(1)).

Last, Claimant contends that the ALJ erred in failing to account for the fluctuating nature of Claimant's symptoms, specifically pointing to Dr. Cathcart's opinion that Claimant would have good days and bad days.   Doc. No. 19, at 23-26; Doc. No. 22; *see also* R. 2902.   But the ALJ did take this into account, specifically noted this portion of Dr. Cathcart's Assessment Form, and found other portions of the medical records, including her course of treatment, did not support the limitations proposed by Dr. Cathcart.   R. 33-34.   The ALJ also discussed Claimant's mental health symptoms at length, noting that she at times presented with an anxious mood affect, but that she had minimal mental health treatment.   R. 26. Claimant points to no applicable legal authority requiring the ALJ do more than this, and therefore the Court finds no error.[14]   *See Bosch v. Comm'r of Soc. Sec.*, No. 6:23-cv-1613-RBD-EJK, 2024 WL 4137282, at *5 (M.D. Fla. July 24, 2024), *report and recommendation adopted*, 2024 WL 4135777 (M.D. Fla. Sept. 10, 2024) (rejecting similar argument based on a check-the-box answer that the plaintiff would have good days and bad days); *Bentley v. Comm'r of Soc. Sec.*, No. 6:21-cv-226-DCI, 2022 WL 1553425,

---

[14] The decisions Claimant cites are unpersuasive on this point, as they addressed claims filed before March 27, 2017, and applied legal standards that do not govern the present case.   Doc. No. 19 (citing *Simon v. Comm'r of Soc. Sec.*, 7 F. 4th 1094 (11th Cir. 2021), *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020), *Mace v. Comm'r of Soc. Sec.*, 605 F. App'x 837 (11th Cir. 2015), and *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841 (11th Cir. 2016)).   *See also Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3, n. 2 (11th Cir. Dec. 21, 2022) (noting that reliance on *Simon* in a new regulations case is "misplaced" as *Simon* applied the treating physician rule and not the current regulations concerning how to assess medical source opinions).

at *3 (M.D. Fla. May 17, 2022) (similar).  *See also Hogan v. Comm'r of Soc. Sec.*, No. 2:22-cv-223-KCD, 2022 WL 17818653, at *6 (M.D. Fla. Dec. 20, 2022) ("The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." (quoting *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020))).

## V.   CONCLUSION.

Accordingly, it is **ORDERED** that:

1.     The Commissioner's final decision is **AFFIRMED**.

2.     The Clerk of Court is directed to **ENTER** judgment in favor of the Commissioner and against Claimant, and thereafter **CLOSE** this case.

**DONE** and **ORDERED** in Orlando, Florida on March 11, 2026.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record